# William C. Wolf, Defendant in Error, v. Albert Crook, Plaintiff in Error.

1. ASSAULT AND BATTERY—*what does not justify.* While a person may defend his own home against attack the law does not allow him to afterwards inflict revengeful punishment upon one who has played a prank upon him while in such home, he realizing that at the time of in-

flicting such punishment that neither his home nor himself nor any member of his family is in danger.

2. ASSAULT AND BATTERY—*how proximate cause of injury determined.* Whether an injury is the result of the assault committed is a question of fact to be determined by the jury from the evidence.

3. TRIAL—*exhibition of injury.* It is within the discretion of the trial judge to permit a plaintiff suing for injuries to exhibit the same to the jury.

Error to the Circuit Court of Shelby county; the HON. ALBERT M. ROSE, Judge, presiding. Heard in this court at the November term, 1910. Affirmed. Opinion filed October 14, 1911.

CHAFEE & CHEW and F. E. LATCH, for plaintiff in error.

W. C. & W. L. KELLEY and RICHARDSON & WHITTAKER, for defendant in error.

MR. PRESIDING JUSTICE PHILBRICK delivered the opinion of the court.

This is an action brought by William C. Wolf, by his next friend, against Albert Crook to recover damages alleged to have been caused by reason of assault and battery committed by defendant on the person of the plaintiff. The trial below resulted in a verdict against defendant for $1200, upon which judgment was rendered.

The grounds urged by defendant as cause for reversal of the judgment are, that the judgment is excessive, that the court erred in permitting the jury to inspect the plaintiff's mouth, the condition of which was alleged to have been caused by injuries inflicted by defendant, that the court erred in giving instructions on behalf of the plaintiff and in refusing instructions asked by the defendant.

The record discloses that on the evening of January 8, 1908, the plaintiff, with several other boys residing in his neighborhood, constructed and took to

the house of the defendant a device known to boys as
a "tick-tack." Defendant and his family had all re-
tired for the night; the tick-tack was placed by some of
the boys who accompanied the plaintiff upon the side
of defendant's house; plaintiff, with the other boys,
then went to a place of concealment where they had
the end of the string, and the operation of the tick-
tack was begun. It roused the defendant from his
slumbers, he took a light and attempted to find the
cause of the disturbance; he did not succeed and re-
tired again. After the light was extinguished and all
was quiet, the tick-tack again began to operate and
defendant was again aroused. This time he succeeded
in locating the string and started to follow it to the
hiding place of the plaintiff and his companions. Be-
fore he arrived at their hiding place, they scattered
and defendant followed in the direction in which they
went. Plaintiff, with two other boys, attempted to con-
ceal themselves by lying down in the grass; defendant,
however, discovered them; two of them ran; plaintiff
was seized by defendant and severely beaten, the re-
sult of which was that his face became very much
swollen, his eyes blackened and closed; he was confin-
ed to the house for something like a week as a result
of the injuries. A doctor was summoned on the even-
ing of the injury and dressed the wounds. Plaintiff
apparently recovered from the injuries but suffered
with what was supposed to be neuralgia during the
entire summer. The following December, his face
again became swollen and his suffering was so intense
that physicians were called and found that he was suf-
fering from a fracture of the upper jaw, that pieces
of the bone had become loosened and had become de-
tached, that pus had formed and was escaping through
an opening in the roof of the mouth, and there were
indications of blood poisoning. An operation was per-
formed for the relief of these conditions, five teeth

were removed and several pieces of bone taken from the head of the plaintiff.

There is no dispute in the record concerning the beating of the plaintiff by defendant on the night in question, but defendant in his answer to this insists that he was defending his home and habitation from assault and was justified in the act, and insists that the court erred in not instructing the jury, at his request, that he had the right to defend his home and habitation.

While the law recognizes a man's home as his castle and permits him to defend it against assault or against assault against any member of his family while therein, the evidence does not disclose that any such assault was made. At the time of the injury, plaintiff was not upon the premises of the defendant; the defendant had followed the plaintiff and his companions for a considerable distance after discovering them and began the attack without any provocation at that time from the plaintiff. The law does not permit a person to avenge himself of his grievances in this manner. There was no assault being made upon either defendant or his habitation at the time he committed the acts complained of; he had had time then to consider what had been done and realize and know that at the time he committed the assault upon the plaintiff he was in no danger personally of receiving any harm and his habitation or anyone therein was in no danger of being injured; his action in this regard was neither in defense of his habitation nor of himself and was wholly unjustifiable. While a man may be aggravated and angered by acts done by other parties, he must not permit his anger to lead him to violations of the law.

Upon the question of permitting the jury to inspect the results of the injury, while courts are not all agreed upon the propriety of permitting a jury to inspect an injury, the doctrine has been recognized in

this state and has been sustained so frequently that it is not error to permit it.

The third and fifth instructions given on behalf of the plaintiff are not subject to the criticism made by defendant, and there was no error in giving them. It was not necessary that they should refer in any manner to the question of the defense of either defendant's person or his habitation, and there is no evidence in this record to base any such contention upon. Neither was there error in the court's refusing the instructions which defendant insists should have been given, being numbered one to eight inclusive of defendant's refused instructions; there is no evidence in this record upon which to base these instructions or the principles of law therein involved; they were properly refused.

The question as to whether or not the injuries shown by this record to have been sustained by the plaintiff were caused by and were the natural and proximate results of the assault and battery committed upon the plaintiff by defendant were questions for the jury, to be determined by them from all the evidence in the case.

We are not able to say that the finding of the jury was not warranted by the evidence in this record; the injuries were of such a character and were so severe that we do not deem the verdict rendered by the jury excessive.

Finding no reversible error in this record, the judgment is affirmed.

*Affirmed.*